IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

*In re PNCI Cash Sweep Programs Litigation.*

2:24-CV-01295-MJH

OPINION

This case had been referred to United States Magistrate Judge Kezia O.L. Taylor for pretrial proceedings in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Rule 72 of the Local Rules for Magistrate Judges.

On April 29, 2026, Magistrate Judge Taylor issued a Report and Recommendation (ECF No. 106), recommending that Defendant, PNC Investment's, LLC (PNCI), Motion to Dismiss (ECF Nos. 79) be granted in part and denied in part. The parties were informed that written objections to the Report and Recommendation were due by May 13, 2026. (ECF Nos. 83 and 84). PNCI filed timely written objections, Plaintiff filed a response to said objections, and PNCI filed a reply to said response. (ECF Nos. 107, 108, and 109). Following de novo review, Judge Taylor's Report and Recommendation will be rejected in part and adopted in part, and PNCI's Motion to Dismiss will be granted in part and denied in part.

I. Background

a. Procedural Background

In this putative class action, Plaintiffs, Manuel Vallin, Joel Browne, and Marlene Dehner, on behalf of themselves and all other similarly situated individuals ("Plaintiffs"), bring suit

against PNCI Investments, LLC ("PNCI") and PNCI Financial Services Group, Inc., ("Parent Company") collectively referred to hereinafter as "PNCI," for underpaying interest on uninvested cash that was held in Plaintiffs' brokerage accounts. (ECF No. 74). Plaintiffs' Consolidated Class Action Complaint asserted claims against PNCI for breach of fiduciary duty (Count I); breach of contract (Count II); (3) breach of implied covenant of good faith and fair dealing (Count III); and unjust enrichment (Count IV). *Id*. PNCI moved to dismiss the Consolidated Class Action Complaint. Magistrate Judge Taylor recommended that PNCI's Motion to Dismiss Counts I and II be denied; Count III to be granted, with that claim to be dismissed without prejudice; and Count IV to be granted, with that claim to be dismissed with prejudice, as amendment would be futile. PNCI's objections address Counts I and II.

B. Factual Background

Because the Court writes mainly for the parties, it will adopt the factual background of the Report and Recommendation:

At all relevant times, PNCI maintained a Bank Deposit Sweep Program ("Deposit Sweep Program"), to which PNCI's brokerage customers were assigned. (ECF No. 74 at ¶ 31). This Deposit Sweep Program, like other "cash sweep" or "sweep" accounts, holds uninvested money in an interest-bearing account so that it can generate income. *Id*. at ¶ 20. As a brokerage, PNCI "ha[s] significant discretion in the creation of their cash sweep programs, including discretion in choosing the partner banks that receive the cash sweep deposits." *Id*. at ¶ 22. Both brokerages and affiliated banks incur substantial benefits via net interest income, commonly referred to in the industry as "spread." *Id*. at ¶ 24. "Spread" represents "the difference between the rate of interest earned by firms and banks loaning and investing the sweep deposits and the interest paid to brokerage customers." *Id*. The interest rates for sweep programs are negotiated between the

brokerage firms and partner banks and are "generally based on the current Federal Funds Rate plus basis points." *Id*. at ¶ 25. The "Federal Funds Rate" is "the interest rate at which banks lend each other money." *Id*. at ¶ 26. Plaintiffs aver that when the Federal Funds Rate increases, "[c]ustomers expect to earn higher percentage yields on cash deposits." *Id*. at ¶ 27.

PNC offers two different types of brokerage accounts: advisory, or "managed" accounts, and self-managed accounts. *Id*. at ¶ 32. Fairly self-explanatory, advisory accounts allow for PNCI to step into the shoes of an investment advisor, and, for a fee based on the value of the account assets, "provide professional asset management advice." *Id*. For self-managed accounts, on the other hand, investment advice is provided upon request, allowing clients to manage their own investments. *Id*. at ¶ 33. Pursuant to the Cash Sweep Program, all uninvested cash, regardless of brokerage account, is transferred into an interest-bearing account at PNC Bank – the primary bank participating in the Cash Sweep Program. *Id*. at ¶ 34.

The terms applicable to the accounts maintained by Plaintiffs, including the Cash Sweep Program, are contained in the following documents:

1. Brokerage Account Customer Agreement;
2. PNC's advisory services agreements;
3. Retirement Account Customer Agreement; and
4. Documents incorporated by reference as described in Plaintiffs' operative complaint.

*Id*. at ¶ 36. The PNC Investments, LLC Proprietary Bank Deposit Sweep Program Disclosure Document ("Disclosure Document") is incorporated by reference into each of the aforementioned agreements and is applicable regardless of the type of account that is opened. *Id*. at ¶ 40. Pursuant to the Disclosure Document, the interest rates that will be paid on deposits in the Cash Sweep Program "will be tiered and will vary based upon prevailing economic and

business conditions." Id. at ¶ 40. Specifically with regard to retirement accounts, PNC promised that the interest paid on cash balances in the Cash Sweep Program, as well as PNC's fees, are "negotiated at arm's length," are "believed to be fair and reasonable," and "are designed to approximate value for the services involved and in the context of customers' Eligible Assets." *Id*. at ¶ 41. Additionally, Plaintiffs submit that included in "PNC Investments Overview of Products and Services," ("Overview Document") is a promise that PNC "will not place the interest of PNCI or our Financial Advisors ahead of yours. That means that both recommendations we make for brokerage accounts and advice in our advisory programs will be made in what we believe is in your best interest." *Id*. at ¶ 42.

Despite these provisions and assurances, Plaintiffs allege that while the interest rates fluctuated some, "Defendants have paid one of the lowest sets of interest rates on uninvested cash in the country, if not the lowest." *Id*. at ¶ 43. Plaintiffs claim that while Federal Funds Rate increased from .08% in 2022 to 5.33% in 2024, with a decrease to 4.33% in September 2025, the interest rates in the Cash Sweep Program remained low. *Id*. at ¶¶ 46, 47. Considering other favorable economic conditions, Plaintiffs allege that the interest rates paid in the Cash Sweep Program were not fair and reasonable, and that while PNC maintained low interest rates for clients, PNC earned significant net interest income from the Cash Sweep Program. *Id*. at ¶¶ 48-53. When compared to other major brokerages, PNC's interest rates were consistently low. *Id*. at ¶¶ 55-56. As a result of underpaying Plaintiffs, PNC "profited handsomely from the uninvested cash they were entrusted to hold while Plaintiffs and Class members received minimal returns." *Id*. at ¶ 54.

II. Relevant Standard

When, as here, objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. § 636(b)(1); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir.2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. *Mawson v. Pittston Police Dep't*, 145 F. Supp. 3d 363, 368–69 (M.D. Pa. 2015) (citing *United States v. Raddatz*, 447 U.S. 667, 676, (1980)).

III. Discussion

A. Breach of Fiduciary Duty (Count I)

The Magistrate Judge recommended denial of PNCI's Motion to Dismiss Count I, because Plaintiffs had sufficiently alleged a fiduciary relationship between the Advisory Plaintiffs and PNCI. Specifically, the Report and Recommendation stated as follows:

> Pursuant to the Investment Advisory Services Agreement, PNCII "will manage [Advisory Plaintiffs'] Account[s] by investing in Funds we select in accordance with the selected Strategy . . . ." ECF No. 74-2 at 2. By virtue of this Agreement, Plaintiffs submit that PNCI has "discretion to buy and sell shares of funds as it sees fit, meaning PNCI can place cash in the Sweep Program (by selling shares) and take cash out of the program (by buying shares)." ECF No. 87 at 28. In the Disclosure Document, the Cash Sweep Program is described as "a core account investment vehicle which, if either selected by default or affirmatively elected, will be used to hold your cash balance while awaiting reinvestment." ECF No. 74-4 at 2. A plausible interpretation of these two provisions is that PNCI controls the cash balance based on its decision of how, when, and with whom, to invest Plaintiffs' funds.

(ECF No. 106 at p. 8). The Magistrate Judge further stated that Plaintiffs have "cast sufficient doubt over the clarity of PNCI's disclosures relative to Advisory Plaintiffs' participation in the Cash Sweeps Program." *Id*. at p. 9.

In its Objections to the Report and Recommendation, PNCI argues the Magistrate erred in failing to dismiss the breach of fiduciary claim (1) under the gist-of-the-action doctrine; (2) the unpled basis that PNCI had discretion to buy and sell securities; and/or (3) PNCI's disclosure of the alleged conflicts. Plaintiffs contend that they have adequately pleaded their fiduciary duty claim. Specifically, Plaintiffs maintain that the gist-of-the-action doctrine does not bar their breach of fiduciary claim, because the parties' relationship gives rise to duties beyond their contractual terms.

The gist-of-the-action doctrine acts to bar tort claims, such as those for breach of fiduciary duty:

> (1) arising solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; or (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

*B.G. Balmer & Co., Inc. v. Frank Crystal & Co., Inc.*, 148 A.3d 454, 469 (Pa.Super. 2016) (cleaned up, opening parentheses added).

Here, after de novo review, the Report and Recommendation erred by not dismissing Plaintiffs' breach of fiduciary claim based upon the gist of the action doctrine. Plaintiffs' breach of fiduciary claim relies on the existing contractual relationship between Plaintiffs and PNCI. In the Investment Advisory Services Agreement, PNCI states that it "will manage [Advisory Plaintiffs'] Account[s] by investing in Funds we select in accordance with the selected Strategy. . . ." (ECF No. 74-2 at 2). In addition, Plaintiffs' Amended Complaint avers that "Defendants also breached their contractual promise that interest rates 'will vary based upon prevailing economic and business conditions.'" (ECF No. 74 at ¶ 69). Both of Plaintiffs' theories of liability, breach of contract and breach of fiduciary duty, arise solely from the Investment Advisory Services

Agreement, and any alleged duties are grounded in the alleged contractual promises with regard to interest rates. Therefore, the tort claim of breach of fiduciary duty duplicates Plaintiffs' breach of contract claim. Plaintiffs have not otherwise pleaded a separate common-law duty outside their contractual relationship that would set forth a distinct tort for breach of fiduciary duty.

Accordingly, the Report and Recommendation, as regards Count I, will not be adopted. PNCI's Motion to Dismiss Count I will be granted. Plaintiffs' Breach of Fiduciary Duty claim will be dismissed. Because it is clear on the face of the Amended Complaint that the gist of the action doctrine would apply, any amendment is deemed futile.

B. Breach of Contract (Count II)

The Magistrate Judge recommended denying PNCI's Motion to Dismiss Count II because Plaintiffs had sufficiently alleged that: (1) PNCI is liable for breach of contract because PNCI "fail[ed] to base interest rates in the sweep program on prevailing economic and business conditions;" (2) PNCI is liable for breach of contract because the Cash Sweep Program favored PNCI's interests over Plaintiffs'; and (3) PNCI is liable for breach of contract to retirement account holders because PNCI "fail[ed] to negotiate, at arm's length, fair and reasonable service fees and interest rates for the Sweep Program." The Court will examine each of these theories in turn.

1. Interest Rates

With regard to an alleged failure to properly base interest rates in the sweep program, the Report and Recommendation identified that the language at issue derives from the Disclosure Document, "which is incorporated by reference in the Non-Retirement and Retirement Account Agreements." (ECF No. 80 at p. 11).

In relevant part, the "Introduction" section of the Disclosure Document provides:

> As discussed herein, interest rates on the Deposit Accounts will be tiered and will vary based upon prevailing economic and business conditions. The Program Bank does not have a duty to offer the highest rates available or rates that are comparable to Money Funds.

(ECF No. 74-4 at p. 6). The Disclosure Document, in the subsection entitled "Interest Rates," further states, in relevant part:

> Your interest rate is based upon your Program Deposits and is determined by PNCI Bank, with guidance from your Broker/Dealer. The rate of interest paid is tiered based on the value of your Program Deposits ("Eligible Assets"). Eligible Assets are currently evaluated on a daily basis. Interest rates, evaluation period and Eligible Assets may change at any time and may be based on a number of factors including general economic, market and business conditions.

*Id*. at pp. 14-15. The Disclosure Document also provides:

> As noted above, the Program Bank may pay rates of interest on Program Deposits that are lower than prevailing market interest rates that may have been paid on accounts otherwise opened directly with such Program Bank. The Program Bank does not have a duty to provide the highest rates available and may instead seek to pay a low rate. Lower rates may be more financially beneficial to the Program Bank. There is no necessary linkage between bank rates of interest and the highest rates available in the market, including any Money Fund rates.

*Id*. at p. 19.

In evaluating this language, at the pleading stage, the Report and Recommendation concluded that Plaintiffs had adequately pleaded a breach of contract claim based upon PNCI's alleged failure to adjust Cash Sweep Account interest rates. Further, the Magistrate Judge found that, at this early stage, it was unclear whether the "Interest Rates" section includes specific enough terms to give less weight to the statement in the "Introduction." Thus, the Magistrate Judge recommended that PNCI's Motion to Dismiss Plaintiffs' breach of contract claim, on the basis that PNCI violated the Disclosure Document vis-à-vis interest rates, should be denied.

PNCI argues, in its objections to the Report and Recommendation, that the Magistrate Judge erred by deferring decision on interpretation of the contractual terms of the Disclosure documents. Plaintiffs respond that Magistrate Judge correctly determined that the Amended Complaint plausibly alleged that PNCI breached its contractual promise that rates will vary based upon prevailing economic and business conditions.

Plaintiffs' breach of contract claim implicates both Pennsylvania and Massachusetts law. Under Pennsylvania law, to state a breach of contract claim, a plaintiff must plead facts showing: "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). Similarly, under Massachusetts law, to state a breach of contract claim, a plaintiff needs to show: "(1) the existence of an agreement supported by consideration; (2) the plaintiff's performance; (3) the defendant's breach; and (4) resulting damages." *MSTM, LLC v. Waters Corp.*, 2026 WL 674383, at *6 (D. Mass. Mar. 10, 2026). Where the court finds contractual language unclear or ambiguous, both Pennsylvania and Massachusetts courts hold that, after a judge has determined contractual ambiguity, interpretation is left to the jury. *See Trizechahn Gateway LLC v. Titus*, 976 A.2d 474 (Pa. 2009) (ambiguous contract provisions are interpreted by the finder of fact); *Nadherny v. Roseland Property Company, Inc.*, 390 F.3d 44, 48 (1st Cir. 2004) (applying Mass. law) (if contract is unambiguous court decides its proper interpretation but if contract is ambiguous, meaning of ambiguous terms usually present questions of fact for jury).

Here, the Court agrees with the Report and Recommendation that the language of the Disclosure Document regarding interest rates leaves open the possibility of multiple, reasonable interpretations. Such holding is in accord with other district court decisions addressing cash

sweep programs. *See Liberty Cap. Grp. v. Oppenheimer Holdings Inc.*, 802 F. Supp. 3d 701, 713 (S.D.N.Y. 2025) (denying motion to dismiss contract claim because defendant did not identify any "specific" or "exact" terms in any later section of the agreement that contradict the language included in the introduction); *Goldsmith v. UBS Fin. Servs. Inc.*, 1:24-CV-6354-GHW, 2026 WL 819461, at *13 (S.D.N.Y. Mar. 25, 2026); *Mehlman v. Ameriprise Fin., Inc.*, CV 24-3018 (JRT/DLM), 2025 WL 2403252, at *7 (D. Minn. Aug. 19, 2025) ("while it is true that the Brokerage Contract discloses that interest rates and interest income will vary and fluctuate based on prevailing economic and business conditions, those disclosures do not obviate any alleged contractual obligation Ameriprise had to secure for and pay clients rates of interest that considered prevailing economic and business conditions"). Therefore, at this stage, it is appropriate for the Plaintiffs' alleged interest rate theory to proceed.

Accordingly, the Report and Recommendation, as regards Count II's interest rate breach of contract theory, will be adopted, and PNCI's Motion to Dismiss as to said theory will be denied.

2. PNCI Interests over Plaintiffs' Interests

With regard to Plaintiffs' breach of contract claim, that PNCI placed its interests above Plaintiffs, the Report recommended denial of PNCI's Motion to Dismiss, because the Magistrate Judge held that Plaintiffs' had adequately pleaded the relevant language from at "Standard of Care" provision in the Overview Document, which was part of the contracts between Plaintiffs and PNCI. The Standard of Care provision stated in relevant part as follows:

> Regardless of whether you select a brokerage account or an advisory account, we will not place the interest of PNCI or our Financial Advisors ahead of yours. That means that both recommendations we make for brokerage accounts and advice we give in our advisory programs will be made in what we believe is in your best interest.

(ECF No. 74-5 at p. 3).

In its objections, PNCI argues that that language from the Overview Document was extra-contractual and imposed no obligation upon PNCI. PNCI further maintains that, even if the Overview Document imposed an obligation, the language only concerns recommendations and advice, and not the interest rates at issue in the breach of contract claim. In response, Plaintiff contends that they have plausibly alleged that the Overview Document is part of the parties' contract and that the language does not limit the contractual obligations to "recommendations and advice."

Here, the Court agrees with the Report and Recommendation that, at this preliminary stage, a further record is necessary to develop how the Overview Document may or may not relate to the other obligations that have been agreed upon by PNCI. In addition, further development may demonstrate how the specific terms of the Overview Document should be interpreted by the Court or the factfinder. In particular, as noted by the Report and Recommendation, discovery may need to examine whether PNCI adequately countered its Standard of Care provision with its Conflict of Interest provision.

Accordingly, the Report and Recommendation, as regards Count II's PNCI's interests over Plaintiffs' breach of contract theory, will be adopted, and PNCI's Motion to Dismiss as to said theory will be denied.

3. Arm's Length Negotiations

As to the final breach of contract theory, the Report and Recommendation denied PNCI's Motion to Dismiss retirement account holders' claim that PNCI failed to negotiate, at arm's length, fair and reasonable service fees and interest rates for the sweep program because, at the

motion to dismiss stage, the Court could not ascertain whether or not the negotiations were at arm's length. The relevant section of the Disclosure Document provides.

> Applicable law governing retirement accounts, such as qualified plans under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and individual retirement accounts under the Internal Revenue Code, necessitates that interest rates paid by the Program Bank for deposits in the Deposit Accounts, **our fee**, and other service fees were negotiated at arm's length, are believed to be fair and reasonable, and are designed to approximate value for the services involved and in the context of customers' Eligible Assets.

ECF No. 74-4 at p. 19 (emphasis added).

In its objections, PNCI contends that this section of the Disclosure Document does not create a contractual obligation. Specifically, PNCI maintains that citation to federal statutory obligations in a contract does not create contractual obligations. PNCI also argues the Report and Recommendation erred because the Amended Complaint alleges no facts to support that the theories that (a) PNCI did not "[b]elieve" its interest rates "to be fair and reasonable," and/or (b) that PNCI did not "negotiate [rates and fees] at arm's length."

The Plaintiffs contend that the the R&R correctly recognized that it is not for the Court to choose between the parties' competing interpretations of the Disclosure Document language. The Plaintiffs also assert that they have sufficiently alleged a breach of the subject provisions.

Here, following de novo review of the Report and Recommendation, the Court agrees that Plaintiffs have adequately alleged facts to support a breach of the Disclosure Document's provisions. In particular, the Court agrees with the Report and Recommendation's analysis that the inclusion of federal statutory language bears relevance to the Court's interpretation of contractual obligations in this case. In addition, the Court agrees that the Amended Complaint contains sufficient allegations that PNCI did not negotiate at arm's length. The Amended Complaint contains the following relevant allegations:

> 52. Given these prevailing economic and business conditions, including the Federal Funds Rate and other benchmarks described herein, Defendants had no basis to believe that the interest rates paid in the Sweep Program were fair and reasonable. Indeed, PNC Bank is a participating bank in William Blaire's cash sweep program, and William Blaire negotiated and has paid its customers interest rates of 2.25% – which is significantly higher than what PNC paid its own customers.
>
> ***
>
> 54. Defendants have earned massive revenues by placing cash sweep deposits with an affiliated bank partner that results in unfair and unreasonably low interest rates to customers while paying larger fees and interest to Defendants. Defendants were obligated to negotiate, at arm's length, with PNC Bank to secure fair and reasonable rates for Class members, and they were required to pay rates that were based on prevailing economic and business conditions. Instead, PNC appears to have deferred control over the interest rates to PNC Bank, and then Defendants and their affiliates profited handsomely from the uninvested cash they were entrusted to hold while Plaintiffs and Class members received minimal returns

(ECF 74 at ¶¶ 52,54). At this stage, such allegations sufficiently support Plaintiffs' breach of contract claim at Count II.

Accordingly, the Report and Recommendation, as regards Count II's arm's length negotiations breach of contract theory, will be Adopted, and PNCI's Motion to Dismiss as to said theory will be denied.

IV. Conclusion

For the reasons stated above, the Report and Recommendation will be rejected in part and adopted in part. PNCI's Motion to Dismiss Count I, breach of fiduciary duty claim, will be granted. Because the claims in Count I are clearly barred by the gist of the action doctrine, no leave to amend Count I will be granted. PNCI's Motion to Dismiss Count II, breach of contract claim, will be denied. As no objections were raised on the remainder of the Report and Recommendation, the Court will adopt the same. Therefore, PNC's Motion to Dismiss Count III, breach of implied covenant of good faith and fair dealing, will be granted. Count III will be

dismissed without prejudice to Plaintiffs amending it in accordance with the Magistrate's recommendations herein. PNC's Motion to Dismiss Count IV, unjust enrichment, will be granted. Any amendment to Count IV will be deemed futile.

Finally, consistent with the Report and Recommendation, the claims asserted against PNC Financial Services Group, Inc., will be dismissed without prejudice. Plaintiffs will be granted to leave to amend, to the extent such facts exist, to support of their claim that PNC Financial Services Group, Inc. is also liable for PNCI's alleged wrongdoings.

As separate order will follow.

DATED this 11th day of September, 2026.

BY THE COURT:

Marilyn J. Horan

MARILYN J. HORAN
United States District Judge